UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| ANTONIO DEWAYNE HILLIARD,<br><br>　　　　　　　　Plaintiff,<br><br>　v.<br><br>CAROLYN W. COLVIN, Acting<br>Commissioner of Social Security,<br><br>　　　　　　　　Defendant. | Case No. 2:15-cv-00541-KLS<br><br>ORDER REVERSING AND<br>REMANDING DEFENDANT'S<br>DECISION TO DENY BENEFITS |

Plaintiff has brought this matter for judicial review of defendant's denial of his application for disability insurance benefits. Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73 and Local Rule MJR 13, the parties have consented to have this matter heard by the undersigned Magistrate Judge. After reviewing the parties' briefs and the remaining record, the Court hereby finds that for the reasons set forth below, defendant's decision to deny benefits should be reversed and this matter should be remanded for further administrative proceedings.

FACTUAL AND PROCEDURAL HISTORY

On April 17, 2012, plaintiff filed an application for disability insurance benefits, alleging disability as of February 1, 2012. *See* Dkt. 7, Administrative Record ("AR") 17. That application was denied upon initial administrative review on June 25, 2012, and on reconsideration on September 21, 2012. *See id.* A hearing was held before an administrative law judge ("ALJ") on

ORDER - 1

March 14, 2013, at which plaintiff, represented by counsel, appeared and testified, as did a lay witness and a vocational expert. *See* AR 39-77.

In a decision dated September 26, 2013, the ALJ determined plaintiff to be not disabled. *See* AR 17-34. Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on February 13, 2015, making that decision the final decision of the Commissioner of Social Security (the "Commissioner"). *See* AR 1; 20 C.F.R. § 404.981. On April 6, 2015, plaintiff filed a complaint in this Court seeking judicial review of the Commissioner's final decision. *See* Dkt. 1. The administrative record was filed with the Court on June 12, 2015. *See* Dkt. 7. The parties have completed their briefing, and thus this matter is now ripe for the Court's review.

Plaintiff argues defendant's decision to deny benefits should be reversed and remanded for further administrative proceedings because the ALJ erred: (1) in failing to find plaintiff's ankylosing spondylitis to be a severe impairment; (2) in evaluating the medical opinion evidence from Julie A. Hodupp, M.D., Dan V. Phan, M.D., and Robert Hander, M.D.; (3) in discounting plaintiff's credibility; (4) in rejecting the lay witness evidence in the record; (5) in assessing plaintiff's residual functional capacity ("RFC"); and (6) in finding plaintiff to be capable of performing other jobs existing in significant numbers in the national economy. For the reasons set forth below, the undersigned agrees the ALJ erred in regard to issues (1), (2), (4), (5), and (6), and therefore in determining plaintiff to be not disabled. Accordingly, the Court finds that defendant's decision to deny benefits should be reversed on this basis, and that this matter should be remanded for further administrative proceedings.

DISCUSSION

The determination of the Commissioner that a claimant is not disabled must be upheld by

ORDER - 2

the Court, if the "proper legal standards" have been applied by the Commissioner, and the "substantial evidence in the record as a whole supports" that determination. *Hoffman v. Heckler*, 785 F.2d 1423, 1425 (9th Cir. 1986); *see also Batson v. Commissioner of Social Security Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004); *Carr v. Sullivan*, 772 F.Supp. 522, 525 (E.D. Wash. 1991) ("A decision supported by substantial evidence will, nevertheless, be set aside if the proper legal standards were not applied in weighing the evidence and making the decision.") (citing *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1987)).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted); *see also Batson*, 359 F.3d at 1193 ("[T]he Commissioner's findings are upheld if supported by inferences reasonably drawn from the record."). "The substantial evidence test requires that the reviewing court determine" whether the Commissioner's decision is "supported by more than a scintilla of evidence, although less than a preponderance of the evidence is required." *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975). "If the evidence admits of more than one rational interpretation," the Commissioner's decision must be upheld. *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984) ("Where there is conflicting evidence sufficient to support either outcome, we must affirm the decision actually made.") (quoting *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971)).[1]

---

[1] As the Ninth Circuit has further explained:

> . . . It is immaterial that the evidence in a case would permit a different conclusion than that which the [Commissioner] reached. If the [Commissioner]'s findings are supported by substantial evidence, the courts are required to accept them. It is the function of the [Commissioner], and not the court's to resolve conflicts in the evidence. While the court may not try the case de novo, neither may it abdicate its traditional function of review. It must scrutinize the record as a whole to determine whether the [Commissioner]'s conclusions are rational. If they are . . . they must be upheld.

*Sorenson*, 514 F.2d at 1119 n.10.

ORDER - 3

I.      The ALJ's Step Two Determination

Defendant employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. *See* 20 C.F.R. § 404.1520. If the claimant is found disabled or not disabled at any particular step thereof, the disability determination is made at that step, and the sequential evaluation process ends. *See id.* At step two of the evaluation process, the ALJ must determine if an impairment is "severe." 20 C.F.R. § 404.1520. An impairment is "not severe" if it does not "significantly limit" a claimant's mental or physical abilities to do basic work activities. 20 C.F.R. § 404.1520(a)(4)(iii), (c); *see also* Social Security Ruling ("SSR") 96-3p, 1996 WL 374181 *1. Basic work activities are those "abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b); SSR 85- 28, 1985 WL 56856 *3.

An impairment is not severe only if the evidence establishes a slight abnormality that has "no more than a minimal effect on an individual[']s ability to work." SSR 85-28, 1985 WL 56856 *3; *see also Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996); *Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir.1988).  Plaintiff has the burden of proving that his "impairments or their symptoms affect [his] ability to perform basic work activities." *Edlund v. Massanari*, 253 F.3d 1152, 1159-60 (9th Cir. 2001); *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1998).  The step two inquiry described above, however, is a *de minimis* screening device used to dispose of groundless claims. *See Smolen*, 80 F.3d at 1290.

At step two in this case, the ALJ found plaintiff had severe impairments consisting of degenerative disc disease, an affective disorder and an organic mental disorder. *See* AR 19. Plaintiff argues the ALJ erred in failing to also find his ankylosing spondylitis to be a severe impairment . The Court agrees. Dr. Phan examined plaintiff in mid-April 2013, and assessed him with significant physical functional limitations based at least in part on a diagnosis of ankylosing

ORDER - 4

spondylitis. *See* AR 434-42. Dr. Hodapp, plaintiff's treating physician, also diagnosed plaintiff with that condition in early November 2012, and again in early January 2013 (*see* AR 393, 409). She also found plaintiff had significant physical functional limitations in late April 2013, based in part on the presence of sacroiliitis[2] as shown on an MRI. *See* AR 427-32, 450.

The record, therefore, contains substantial evidence indicating plaintiff's ankylosing spondylitis has had more than a *de minimis* impact on his ability to perform work-related tasks, and therefore constitutes a severe impairment. Defendant argues there is no credible evidence that plaintiff was significantly limited by ankylosing spondylitis that was not already accounted for in the ALJ's assessment of his RFC. As just discussed, however, the evaluation reports of Dr. Hodapp and Dr. Phan provide that credible evidence. In addition, as discussed in greater detail below, both physicians assessed significant functional limitations neither adopted by the ALJ nor validly rejected by her. Accordingly, the Court finds the ALJ's error here was not harmless even though the ALJ did not find plaintiff disabled at step two, but continued with the sequential disability evaluation process. *See Stout v. Commissioner, Social Security Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006) (error harmless where it is non-prejudicial to claimant or irrelevant to ALJ's ultimate disability conclusion); *Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005) (any error by ALJ in failing to consider plaintiff's obesity at step two harmless, because ALJ did not err in evaluating plaintiff's impairments at later steps).

II.     The ALJ's Evaluation of the Medical Evidence in the Record

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. *See Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). Where the medical evidence in the record is not conclusive, "questions of credibility and

---

[2] It appears "[t]he hallmark of ankylosing spondylitis is 'sacroiliitis,' or inflammation of the sacroiliac (SI) joints, where the spine joins the pelvis." http://www.niams.nih.gov/Health_Info/Ankylosing_Spondylitis/.

resolution of conflicts" are solely the functions of the ALJ. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). In such cases, "the ALJ's conclusion must be upheld." *Morgan v. Commissioner of the Social Security Admin.*, 169 F.3d 595, 601 (9th Cir. 1999). Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." *Id.* at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." *Reddick*, 157 F.3d at 725. The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* The ALJ also may draw inferences "logically flowing from the evidence." *Sample*, 694 F.2d at 642. Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." *Magallanes v. Bowen*, 881 F.2d 747, 755, (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Id.* at 830-31. However, the ALJ "need not discuss *all* evidence presented" to him or her. *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original). The ALJ must only explain why "significant probative evidence has been rejected." *Id.*; *see also Cotter v. Harris*, 642 F.2d 700, 706-07 (3rd Cir. 1981); *Garfield v. Schweiker*, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of

ORDER - 6

those who do not treat the claimant. *See Lester*, 81 F.3d at 830. On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." *Batson v. Commissioner of Social Security Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004); *see also Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." *Lester*, 81 F.3d at 830-31. A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." *Id.* at 830-31; *Tonapetyan*, 242 F.3d at 1149.

### A. Dr. Hodapp

In regard to the opinion evidence from Dr. Hodupp, the ALJ found:

> On April 22, 2013, Julie Hodapp, M.D., opined that the claimant was capable of lifting 10 pounds occasionally; standing and/or walking for one hour at a time, with a break after 20 minutes; and sitting for one hour at a time. She opined that the claimant could sit a total of three hours in an eight-hour workday; stand a total of three hours in an eight-hour workday; and walk a total of two hour in an eight-hour workday. She noted that the claimant changes positions in order to avoid pain, including laying and resting, but she did not clearly state that she thought the claimant had a medical necessity had [sic] to do these things. Dr. Hodapp stated that the claimant could occasionally push and pull and reach overhead bilaterally, and stated that he could frequently finger and feel bilaterally. In addition, she opined that the claimant could occasionally operate bilateral foot controls and occasionally balance, stoop, and climb ramps and stairs. She opined that the claimant should never kneel, crouch, crawl, or climb ladders and scaffolds. Further, Dr. Hodapp opined that the claimant should never work around unprotected heights, moving mechanical parts, or vibration. She opined that the claimant could occasionally operate a motor vehicle, be exposed to humidity and wetness, be exposed to pulmonary irritants, and be exposed to extremes of temperature. Further, Dr. Hodapp noted that the claimant's pain medication affected his concentration and cognition, but she did not provide a function-by-function assessment of his concentration and cognition abilities (12F). The undersigned accords some weight to this opinion, insofar as it is consistent with [the] residual functional capacity described herein. However, the objective medical evidence is consistent with the claimant being capable [of] performing work at

ORDER - 7

>the light exertional level, rather than the sedentary level. For instance, consistent work at the light exertional level, although the claimant has some limitations in his cervical and lumbar range of motion at times, his strength is intact, sensory examinations are intact, and his gait is more often than not unremarkable (see e.g. 3F/4, 10, 24; 4F/30; 10F/12; 13F/2). Yet, as described in Finding Number 10 below, even if the claimant were limited to sedentary work, he would be able to perform other jobs available in significant numbers in the national economy.

AR 30-31. Plaintiff argues the ALJ did not offer valid reasons for discounting the opinion of Dr. Hodapp here. The Court agrees.

As noted above, the ALJ declined to adopt any need to change positions in order to avoid pain, because Dr. Hodapp did not clearly state she thought plaintiff had a medical necessity to do so. As asserted by plaintiff, this is an unreasonable interpretation of Dr. Hodupp's opinion. While Dr. Hodapp did state plaintiff "changes positions to avoid pain – laying/resting," she also clearly indicated that she believed plaintiff could only sit, stand and walk for a total of one hour at a time each, and that plaintiff "needs a break after 20 min[utes]" in regard to standing and walking. AR 428. Read together, these comments show Dr. Hodapp felt plaintiff would need to take a break every 20 minutes when not sitting – and every hour when sitting (*see id.*) – which certainly at the very least implies a need to change positions at those times.

Whether Dr. Hodapp actually believed plaintiff also needed to lay down and/or rest when changing positions, or was merely indicating what plaintiff generally does when taking a break, is not entirely clear. That is an issue more appropriately addressed on remand. But given that the ALJ did not include a need to change positions, or to take breaks other than "normal breaks,"[3] in her assessment of plaintiff's RFC (*see* AR 22), it is clear she rejected that aspect of Dr. Hodapp's opinion, which was error for the reasons just discussed. It was also error for the ALJ to reject Dr.

---

[3] The ALJ did not define what she meant by normal breaks. Presumably, though, this does not include taking breaks every 20 minutes or even every hour.

ORDER - 8

Hoddap's statement that plaintiff's pain medications "affect his concentration/cognition" (AR 432), on the basis that she "did not provide a function-by-function assessment" of those abilities (AR 30), given that the section of the evaluation form where she included that statement did not require such detail (*see* AR 432). To the extent the ALJ found Dr. Hodapp's statement unclear or ambiguous, she should have re-contacted her.[4]

Lastly, the ALJ erred in rejecting Dr. Hoddap's opinion to the extent it limited plaintiff to less than the light exertional work level on the basis that despite the presence of some back range of motion limitation at times, the record also contained findings of intact strength and sensation and unremarkable gait. It is unclear, however, how the ALJ came to the conclusion that the latter findings were more determinative of plaintiff's functional capabilities than the abnormal range of motion findings. In addition, as discussed above Dr. Hodapp based the limitations she assessed at least in part on an MRI demonstrating the presence of sacroilitis. *See* AR 429, 450.

While it may turn out to be that the generally normal strength, sensation and gait findings the ALJ relied on are a better indicator of plaintiff's physical functional capabilities given his diagnosed impairments, the ALJ offered no reasonable explanation as to why her interpretation of the medical evidence in the record should outweigh that of Dr. Hoddap, plaintiff's treating physician. As such, the Court agrees with plaintiff that the ALJ improperly substituted her own lay opinion for that of Dr. Hodapp.[5] *See Gonzalez Perez v. Secretary of Health and Human*

---

[4] The ALJ's duty "to fully and fairly develop the record and to assure that the claimant's interests are considered" is triggered where the evidence in the record is ambiguous or the record is inadequate to allow for proper evaluation of that evidence. *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (citations omitted). The Commissioner's own regulations further provide that when evidence received from a medical source is inadequate to determine whether a claimant is disabled, that source will be re-contacted to seek additional evidence or clarification when the source's report contains an "ambiguity that must be resolved" or "does not contain all the necessary information." 20 C.F.R. § 404.1512(e)(1).

[5] Although it is true as the ALJ pointed out that the vocational expert testified that there were other, sedentary jobs available that an individual with plaintiff's limitations could do if he were limited to sedentary work, as discussed in greater detail below neither the ALJ's RFC assessment nor her hypothetical questions contain all of the functional

ORDER - 9

*Services*, 812 F.2d 747, 749 (1st Cir. 1987) (ALJ may not substitute own opinion for that of physician); *McBrayer v. Secretary of Health and Human Services*, 712 F.2d 795, 799 (2nd Cir. 1983) (same); *Whitney v. Schweiker*, 695 F.2d 784, 788 (7th Cir. 1982) (ALJ may not base decision on "his own expertise" and should avoid commenting on meaning of clinical findings without supporting medical expert testimony).

B.    <u>Dr. Phan</u>

With respect to the opinion of Dr. Phan, the ALJ found:

> On April 16, 2013, consultative evaluator Dr. Phan opined that the claimant could sit up to six hours cumulatively in an eight-hour workday; stand and/or walk up to six hours cumulatively in an eight-hour workday; and lift and carry 50 pounds occasionally and 25 pounds regularly. He opined that the claimant should avoid frequent bending, stooping, twisting, and turning until his neck and back pain were treated and stable and opined that the claimant's ability to push and pull heavy amounts was limited due to his complaints of neck and back pain. He opined that the claimant could work with small objects and files frequently (13F/2-3). In addition, on a medical source statement checkbox form, Dr. Phan opined that the claimant could sit for one hour at a time without interruption, stand for 30 minutes at a time without interruption, and walk for 30 minutes at a time without interruption. He opined that the claimant could frequently reach and handle bilaterally, and occasionally push and pull bilaterally. He opined that the claimant could occasionally stoop, kneel, crouch, crawl, and climb. His checkbox responses indicate that he believed the claimant could frequently work around moving machinery, operate a motor vehicle, work[]around humidity and wetness, and work around vibration (13F/4-9). The undersigned accords some weight to Dr. Phan's opinion because it is generally consistent with his findings upon examination of the claimant. Although the claimant has some limitations in his cervical and lumbar range of motion at times, his examinations in his treatment records indicate that his strength is intact, and his gait is more often than not unremarkable (see e.g. 3F/4, 10, 24; 4F/30; 10F/12; 13F/2).[]However, the residual functional capacity described herein does not limit the claimant's reaching, handling, and fingering because the claimant's sensory examinations, grip strength, upper extremity strength, and range of motion in his wrists are unremarkable upon examination (see e.g. 13F/2, 3F/4). In addition, the residual functional capacity described herein further limits the clamant to work at the light exertional level, in order to

---

limitations Dr. Hodapp found that the ALJ improperly rejected. *See* AR 21-22, 71-74. The Court thus disagrees with defendant that this error was harmless.

ORDER - 10

accommodate the credible degree of his subjective complaints.

AR 30. Plaintiff argues, and the Court once more agrees, that the ALJ erred in failing to properly explain why she did not adopt the sitting, standing and walking limitations Dr. Phan found. This is because the ALJ did not provide sufficiently specific reasons for rejecting them. Indeed, as just noted the ALJ found Dr. Phan's opinion to be generally consistent with his examination findings. Further, although the ALJ again noted the generally normal strength, sensation and gait findings, she offered no explanation as to why those findings may have been sufficient to reject the sitting, standing and walking limitations, but not others, such as those on stooping, kneeling, crouching, crawling, and climbing. *See id.* The only limitations the ALJ did specifically reject due to normal clinical findings were those regarding reaching, handling and fingering. *See id.* Given this lack of clarity in the ALJ's reasoning, the Court is unable to uphold her rejection of the sitting, standing and walking limitations assessed by Dr. Phan.

    C.    Dr. Hander

Plaintiff also challenges the ALJ's reliance on the opinion of Dr. Hander, with regard to which the ALJ found:

> . . . [S]tate agency medical consultant Robert Hander, M.D., opined that the claimant could lift 20 pounds occasionally and 10 pounds frequently; stand and/or walk about six hours in an eight-hour workday; and sit about six hours in an eight-hour workday. He opined that the claimant could frequently balance, stoop, kneel, crouch, crawl, and climb ramps and stairs. He opined that the claimant could occasionally climb ladders, ropes, and scaffolds. Dr. Hander opined that the claimant could occasionally reach overhead bilaterally due to history of neck pain and degenerative disc disease. In addition, he opined that the claimant should avoid concentrated exposure to extreme cold, vibration, and hazards (3A). The state agency medical consultant opined that the claimant did not meet the durational requirements of the Regulations (3A/7). The undersigned accords little weight to the assertion that the claimant did not meet the durational requirement, because evidence received at the hearing level indicates otherwise. The undersigned accords significant weight to the state agency medical consultant opinion because it is consistent with the imaging studies and objective findings on examination in the record. Although

ORDER - 11

> the claimant has some limitations in his cervical and lumbar range of motion at times, his strength is intact, and his gait is more often than not unremarkable (see e.g. 3F/4, 10, 24: 4F/30; 10F/12; 13F/2). However, the residual functional capacity described herein limits the claimant's postural activities further in order to accommodate the credible degree of his subjective complaints and objective findings during his physical consultative evaluation (13F).

AR 29 (internal footnote omitted). The Court agrees with plaintiff that the ALJ erred in giving significant weight to Dr. Hander's opinion, while giving less weight to that of Dr. Hodapp. As discussed above, the ALJ failed to provide valid reasons for rejecting the latter physician's more restrictive limitations, which are largely the same reasons the ALJ offered for giving significant weight to Dr. Hander's opinion, namely the generally normal clinical findings concerning strength, sensation and gait in the record. Further, as plaintiff points out Dr. Hodapp not only is his treating physician – whereas Dr. Hander is a non-examining consultative physician – but she also is a specialist in an area much more closely related to plaintiff's spinal impairments and associated limitations than Dr. Hander, who is an eye specialist. *See Benecke v. Barnhart*, 379 F.3d 587, 594 n.4 (9th Cir. 2004) (greater deference given to opinion of specialist about medical issues related to his or her area of specialty). For these reasons, the ALJ improperly relied on the opinion of Dr. Hander.

III.     The ALJ's Evaluation of the Lay Witness Evidence in the Record

Lay testimony regarding a claimant's symptoms "is competent evidence that an ALJ must take into account," unless the ALJ "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). In rejecting lay testimony, the ALJ need not cite the specific record as long as "arguably germane reasons" for dismissing the testimony are noted, even though the ALJ does "not clearly link his determination to those reasons," and substantial evidence supports the ALJ's decision.

ORDER - 12

1  *Id.* at 512. The ALJ also may "draw inferences logically flowing from the evidence." *Sample*,

2  694 F.2d at 642.

3    With respect to the lay witness evidence in the record, the ALJ found:

>  At the hearing, the claimant's wife, Manika Hilliard provided the following testimony. Ms. Hilliard testified that the claimant has to lie down quite often. She testified that he has difficulty sitting, standing, and concentrating. She said he cannot bend, cook, clean, or do laundry. In addition, she testified that he has changed emotionally. Ms. Hilliard testified that if the claimant tries to do an activity, he experiences increased pain. She stated that he distances himself from his family when he is in a lot of pain, his motivation has decreased, and he is more emotional than he used to be. The undersigned has considered Ms. Hilliard['s] statements, but accord them limited weight. Although her testimony is essentially consistent with the testimony of the claimant, the undersigned notes that she has a financial interest in the outcome of the case. Accordingly, the undersigned gives more weight to the objective evidence in the record.

AR 31-32. Plaintiff argues the ALJ failed to give germane reasons for rejecting Ms. Hilliard's testimony here. Again, the Court agrees.

  Citing *Gregor v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006), defendant argues an ALJ may properly consider the close relationship between a claimant and the lay witness, as well as the possibility that the witness might be influenced by the desire to help the claimant. In *Bruce v. Astrue*, 557 F.3d 1113 (9th Cir. 2009), however, the Ninth Circuit reiterated its position that "friends and family members in a position to observe a claimant's symptoms and daily activities are competent to testify as to [his or] her condition." *Id.* at 1116 (quoting *Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993). The Court of Appeals noted its prior decision in *Gregor*, but nevertheless went on to find the ALJ erred in rejecting the lay witness testimony in *Bruce* on the basis of that witness's close relationship with the claimant. *See id.* Most recently in *Valentine v. Commissioner of Social Security*, 574 F.3d 685 (9th Cir. 2009), furthermore, the Ninth Circuit stated that "evidence that a specific spouse exaggerated a claimant's symptoms *in order* to get

ORDER - 13

access to his disability benefits, as opposed to being an 'interested party' in the abstract, might suffice to reject that spouse's testimony." *Id.* at 694 (emphasis in original).

The ALJ in this case pointed to no evidence in the record that Ms. Hilliard exaggerated plaintiff's symptoms to get access to his disability benefits or that her testimony was suspect for any reason other than the fact that she had a close relationship with plaintiff. As such, the Court finds the ALJ improperly rejected Ms. Hilliard's testimony on this basis. Defendant argues the ALJ properly rejected that testimony for another proper reason, that she was giving more weight to the objective medical evidence in the record. It is true that where there is a conflict between the medical evidence and a lay witness's testimony, this constitutes a valid basis for discounting that testimony. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005). An ALJ, however, may not – as the ALJ appears to have done here – "*discount in general the value of lay testimony in comparison to objective medical evidence.*" *Staley v. Astrue*, 2010 WL 3230818, *19 (W.D. Wash. 2010) (emphasis in original) (discussing *Smolen*, 80 F.3d at 1288-89, and *Bruce v. Astrue*, 557 F.3d 1113, 1116 (9th Cir. 2009)).[6]

IV.   The ALJ's Assessment of Plaintiff's Residual Functional Capacity

If a disability determination "cannot be made on the basis of medical factors alone at step three of the evaluation process," the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." SSR 96-8p, 1996 WL 374184 *2. A claimant's residual functional capacity assessment is used at step four to determine whether he or she can do his or her past relevant work, and at step five to determine

---

[6] As noted by Judge Mary Alice Theiler in *Staley*, the ALJ in *Smolen* was found to have erred in rejecting the lay testimony in that case because "medical records, including chart notes made at the time, are far more reliable and entitled to more weight than recent recollections made by family members and others, made with a view toward helping their sibling in pending litigation." *Staley*, 2010 WL 3230818, at *19 (quoting *Smolen*, 80 F.3d at 1289). As in both *Smolen* and *Bruce*, the ALJ in this case "*essentially rejected the value of lay testimony as compared to* [the] *objective medical evidence*" in the record. *Id.* (emphasis in original).

ORDER - 14

whether he or she can do other work. *See id.* It thus is what the claimant "can still do despite his or her limitations." *Id.*

A claimant's residual functional capacity is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. *See id.* However, an inability to work must result from the claimant's "physical or mental impairment(s)." *Id.* Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments." *Id.* In assessing a claimant's RFC, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." *Id.* at *7.

The ALJ in this case found plaintiff had the residual functional capacity:

> **. . . to perform less than the full range of light work . . . involving lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. The claimant can lift up to 20 pounds occasionally and lift or carry up to 10 pounds frequently. The claimant can stand and/or walk for approximately 6 hours and sit for approximately 6 hours in an eight-hour workday with normal breaks. The claimant can perform jobs that require him to frequently climb ramps are [sic] stairs, occasionally climb ladders, ropes, or scaffolds, and occasionally balance, stoop, kneel, crouch, and crawl. The claimant can perform jobs that involve unlimited reaching, handling, and fingering. The claimant can perform jobs that involve occasional overhead reaching. He can perform jobs that allow him to avoid concentrated exposure to extreme cold, excessive vibration, and workplace hazards such as dangerous machinery and unprotected heights. In addition, the claimant can perform simple tasks and have routine, superficial interactions with coworkers and the general public, meaning, as an example, giving and receiving instructions or directions, answering basic questions from the public, but not engaging in complex interactions such as mediation, negotiation, or extensive team projects.**

AR 21-22 (emphasis in original). But because of the ALJ's errors in evaluating the medical opinion and lay witness evidence in the record discussed above, the Court agrees with plaintiff that the ALJ's RFC assessment cannot be said to completely and accurately describe all of

ORDER - 15

plaintiff's functional capabilities and thus to be supported by substantial evidence. Accordingly, here too the ALJ erred.

V.     The ALJ's Findings at Step Five

If a claimant cannot perform his or her past relevant work, at step five of the disability evaluation process the ALJ must show there are a significant number of jobs in the national economy the claimant is able to do. *See Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. § 404.1520(d), (e). The ALJ can do this through the testimony of a vocational expert or by reference to defendant's Medical-Vocational Guidelines (the "Grids"). *Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2000); *Tackett*, 180 F.3d at 1100-1101.

An ALJ's findings will be upheld if the weight of the medical evidence supports the hypothetical posed by the ALJ. *See Martinez v. Heckler*, 807 F.2d 771, 774 (9th Cir. 1987); *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984). The vocational expert's testimony therefore must be reliable in light of the medical evidence to qualify as substantial evidence. *See Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988). Accordingly, the ALJ's description of the claimant's disability "must be accurate, detailed, and supported by the medical record." *Id.* (citations omitted). The ALJ, however, may omit from that description those limitations he or she finds do not exist. *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

At the hearing, the ALJ posed a hypothetical question to the vocational expert containing substantially the same limitations as were included in the ALJ's assessment of plaintiff's residual functional capacity. *See* AR 71-72. In response to that question, the vocational expert testified that an individual with those limitations – and with the same age, education and work experience as plaintiff – would be able to perform other jobs. *See id.* Based on the testimony of the vocational expert, the ALJ found plaintiff would be capable of performing other jobs existing in

ORDER - 16

significant numbers in the national economy. *See* AR 33-34. But because as discussed above the ALJ erred in assessing plaintiff's RFC, the hypothetical question the ALJ posed cannot be said to completely and accurately describe all of plaintiff's functional capabilities, and therefore the vocational expert's testimony and the ALJ's step five determination also cannot be said to be supported by substantial evidence or free of error.

Plaintiff argues the ALJ also failed to resolve inconsistencies between the testimony of the vocational expert concerning the jobs he identified and the descriptions thereof contained in the Dictionary of Occupational Titles ("DOT"), and thus erred on this basis as well. The ALJ may rely on vocational expert testimony that "contradicts the DOT, but only insofar as the record contains persuasive evidence to support the deviation." *Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir. 1995). The ALJ, furthermore, has the affirmative responsibility to ask the vocational expert about possible conflicts between his or her testimony and information in the DOT. *Haddock v. Apfel*, 196 F.3d 1084, 1091 (10th Cir. 1999). Thus, before relying on evidence obtained from a vocational expert, the ALJ is required to "elicit a reasonable explanation for any discrepancy" with the DOT. *Haddock*, 196 F.3d at 1087; SSR 00-4p, 2000 WL 189704, at *2. The ALJ also must explain in his or her decision how the discrepancy or conflict was resolved. SSR 00-4p, 2000 WL 189704, at *4.

As pointed out by plaintiff each job the vocational expert identified and the ALJ found that plaintiff could do involve working around machinery, which the Court agrees reasonably could be deemed to be dangerous. *See* 33; DOT 706.684-022, 1991 WL 679050 (small products assembler: "Loads and unloads previously setup machines, such as arbor presses, drill presses, taps, spot-welding machines, riveting machines, milling machines, or broaches, to perform fastening, force fitting, to light metal-cutting operation on assembly line."); DOT 529.687-010,

ORDER - 17

1991 WL 674737 (basket filler): "Removes sealed cans or jars . . . from conveyer . . . May load basket in layers, using hydraulic mechanism . . . May move baskets . . . using trucks or hoist."); DOT 920.687-042, 1991 WL 687971 (bottling-line attendant: "Pastes labels and tax stamps . . . as bottles pass on conveyor."). As discussed above, however, the ALJ limited plaintiff to jobs where workplace hazards such as dangerous machinery could be avoided, which would seem to conflict with the requirements of each of the identified jobs. Neither the ALJ nor the vocational expert, furthermore, addressed this potential conflict.[7] *See* AR 33-34; 70-76. This was error.

Plaintiff additionally points out that although the ALJ limited him to occasional overhead reaching, the above three jobs each require the ability to reach frequently. *See* DOT 706.684-022, 1991 WL 679050; DOT 529.687-010, 1991 WL 674737; DOT 920.687-042, 1991 WL 687971. Defendant argues there is no conflict here, because the DOT does not distinguish between types of reaching and thus the vocational expert's testimony does not deviate from the information in the DOT. As plaintiff points out, though, the Commissioner's own rulings define "[r]eaching" as "extending the hands and arms *in any direction*." SSR 85-15, 1985 WL 56857, at *7 (emphasis

---

[7] Defendant asserts "[c]learly, the vocational expert did not see the machinery involved in the three jobs identified to be 'dangerous' in nature," given that the vocational expert identified those jobs as ones that could be performed even with the limitation on avoiding dangerous machinery contained in the hypothetical question. Dkt. 10, p. 17; *see also* AR 71. If defendant is correct in regard to what the vocational expert believed in terms of a lack of conflict, then he was in error for the reasons discussed above. It is also equally plausible that the vocational expert just missed the conflict. In any event, as noted above, the ALJ herself has a duty explain or resolve any conflicts in her decision. In addition, while it is true that a vocational expert's "recognized expertise provides the necessary *foundation* for his or her testimony," the mere fact of that expertise does not constitute a reasonable *explanation* for the deviation from the DOT contained in the testimony itself. *Bayliss*, 427 F.3d at 1218 (emphasis added). In other words, although the vocational expert's expertise alone certainly can provide the basis for the ALJ to find that expert's testimony *reliable*, it says nothing about *why* the ALJ – or the Court – should accept that testimony over the information in the DOT, particularly given the "great weight" that publication carries and upon which the Commissioner herself "routinely relies" to determine a claimant's ability to perform other jobs in the national economy. *Johnson*, 60 F.3d at 1435 n.7 and n.8 (finding explanation for deviation from DOT to be satisfactory because "the vocational expert described the characteristics and requirements of jobs in the local area," and "the DOT is not invariably controlling, particularly where local job characteristics are concerned"); *Terry v. Sullivan*, 903 F.2d 1273, 1276 (9th Cir. 1990); *see also Haddock*, 196 F.3d at 1091-92 (noting that one possible reasonable explanation for deviation from DOT "would be that the job the [vocational expert] is testifying about is not included in the [DOT], but is documented in some other acceptable source," and another one "would be that a specified number or percentage of a particular job is performed at a lower RFC level than the Dictionary shows the job generally to require").

ORDER - 18

in original). Thus, a limitation to only occasional reaching in *one* of those directions necessarily implies a restriction on the ability to reach on a frequent basis generally. The Court therefore rejects defendant's argument and instead finds an unresolved conflict exists here that the ALJ erred in not resolving.

VI. <u>This Matter Should Be Remanded for Further Administrative Proceedings</u>

The Court may remand this case "either for additional evidence and findings or to award benefits." *Smolen*, 80 F.3d at 1292. Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). Thus, it is "the unusual case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy," that "remand for an immediate award of benefits is appropriate." *Id.*

Benefits may be awarded where "the record has been fully developed" and "further administrative proceedings would serve no useful purpose." *Smolen*, 80 F.3d at 1292; *Holohan v. Massanari*, 246 F.3d 1195, 1210 (9th Cir. 2001). Specifically, benefits should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Smolen*, 80 F.3d 1273 at 1292; *see also McCartey v. Massanari*, 298 F.3d 1072, 1076-77 (9th Cir. 2002). Because issues still remain in regard to the medical evidence in the record, the lay witness testimony, plaintiff's RFC, and her ability to perform other jobs existing in significant numbers in the national economy, remand for further consideration of those issues is warranted.

ORDER - 19

Although plaintiff requests that defendant also be ordered to obtain the testimony of a medical expert on remand, it is not clear at this time that such would be required of defendant, and thus the Court declines to order her to do so.

## CONCLUSION

Based on the foregoing discussion, the Court hereby finds the ALJ improperly concluded plaintiff was not disabled. Accordingly, defendant's decision to deny benefits is REVERSED and this matter is REMANDED for further administrative proceedings in accordance with the findings contained herein.

DATED this 22nd day of September, 2015.

Karen L. Strombom
United States Magistrate Judge

ORDER - 20